**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.  14-20206-CR-BLOOM**

**UNITED STATES OF AMERICA**,

      Plaintiff,

v.

**CORBY MOORE**,

      Defendant.

_____/

**<u>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS</u>**

THIS CAUSE came before the Court upon Defendant's Motion to Suppress the video evidence or still photographs, ECF No. [166], which was captured from cameras mounted on utility poles from about June, 2013, until about February, 2014.

The Court has reviewed Defendant's Motion, along with the Government's Memorandum in Response, ECF No. [170], Defendant's Memorandum in Reply, ECF No. [174], as well as the testimony offered at the Evidentiary Hearing held on August 29, 2014. Being fully advised, the Court hereby denies Defendant's Motion to Suppress.

**I.      Background**

The Government seeks to introduce video and still photos of images captured from different cameras allegedly depicting criminal activity. The Government installed six cameras, four on utility poles, one on the side of a business, and the other one on an apartment building's roof. The Government obtained permission from the property owners before installing each of the cameras. The cameras focused on an apartment complex, known as the "Carters," located at 5200-5300 NW 26th Avenue. The apartment complex was known to be a place of drug dealing, firearms offenses and other violent crimes. The cameras focused on different angles of the

outside area of the "Carters," capturing various people, including the Defendant, engaging in illegal activities. The Government did not obtain a warrant authorizing the surveillance of the "Carters." The surveillance activities took place from about June, 2013, until about February, 2014.

On April 1, 2014, Defendant Corby Moore was charged by indictment with conspiracy to possess various drugs with the intent to distribute, in violation of 21 U.S.C.§ 846, and conspiracy to use, carry and possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o). It is alleged that both conspiracies occurred around June 1, 2013, until around March 31, 2014. Defendant was also indicted for using and carrying a firearm during and in relation to a drug crime on December 5, 2013, in violation of 18 U.S.C. § 924(c)(1)(A). Defendant has filed a Motion to Suppress the evidence captured from the video surveillance. The Court held an Evidentiary Hearing on this matter on August 29, 2014.

## II.    Discussion

The Fourth Amendment, which protects the right of privacy, is implicated in regard to searches and seizures. A search can occur when an individual's reasonable expectation of privacy has been violated. *Katz v. United States*, 389 U.S. 347, 353 (1967). A search can also occur when there has been a physical trespass for the purpose of obtaining information. *United States v. Jones*, 132 U.S. 945, 949 (2012).

Because the Government obtained permission from the property owners before installing the cameras, there is no physical trespass present in this case. This is not contested here.

The issue presented is whether the Government violated Defendant's reasonable expectation of privacy with its continuous surveillance of the area, which included Defendant's repeated presence at the location over a period of approximately eight months.

2

Defendant argues the evidence obtained through the pole camera surveillance, revealing Defendant's "likeness, location, and behavior," is protected by the Fourth Amendment. ECF No. [166] at 7. Additionally, Defendant argues that he has a privacy interest in his own image. *Id.* The Defendant's argument lacks merit.

Previous courts have concluded that evidence obtained through pole camera surveillance does not implicate an individual's Fourth Amendment rights. *United States v. Bucci*, 582 F.3d 108, 116-17 (1st Cir. 2009) (holding that the eight (8) month warrantless video surveillance of defendant's driveway and garage door did not violate defendant's Fourth Amendment rights because defendant's activities were conducted in unobstructed plain view). *United States v. Aguilera*, No. 06-CR-336, 2008 U.S. Dist. LEXIS 10103, at *5 (D. Wis. Feb. 11, 2008) (denying defendant's motion to suppress evidence obtained through warrantless video surveillance because "the police could have stood on the street outside defendant's house and observed the comings and goings from his driveway; substitution of a camera for in-person surveillance does not offend the Fourth Amendment; and the camera did not record activities within defendant's home or its curtilage obscured from public view.").

In the instant case, the issue is whether there was an unreasonable search and seizure through the Government's use of pole camera surveillance, which captured Defendant's image, and observed him engaging in illegal activities. Each image was captured by videotape in unobstructed plain view. The Defendant's actions at issue were conducted in the parking lot of an apartment complex. The location where the Defendant's activities took place,  and where the surveillance was conducted, was a public area, observable by the naked eye by anyone who happened to be in the nearby area. Additionally, it was not the Defendant's home. Property used for commercial purposes is treated differently than property used for residential purposes.

*Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998) (holding that the observation of the bagging of cocaine, which police observed from a ground-floor apartment window, did not violate defendant's Fourth Amendment rights, because defendant was only in the apartment for a few hours, had never been to the apartment before and was only there to bag cocaine). A person has no legitimate expectation of privacy when they are conducting a purely commercial transaction for a short period of time and the person has no personal relationship to the homeowner. *Id.*

In the present case, the area under surveillance was not only a commercial property and not the Defendant's residence, but was an area in plain sight freely accessible to the public.  The Defendant engaged in various drug transactions at this location, and was captured holding a firearm. The instant case is not a case where the Defendant made an attempt to conceal activities in an area that one could reasonably expect to be private. *Cf. Katz*, 389 U.S. at 353-354 (demonstrating a reasonable expectation of privacy in a public phone booth when defendant closed the door and paid the toll). The camera did no more than record video footage of the open areas. It did not invade the privacy of any home or apartment, or record anything other than the images and activities of any individual who happened to be in the open areas on which the cameras were focused.

The crux of Defendant's argument is that the length of the surveillance should take the surveillance at issue out of the realm of cases concluding that there is no Fourth Amendment protection. *See* ECF No. [174] at 2-3 (citing *United States v. Houston*, 965 F. Supp. 2d 855 (E.D. Tenn. 2013)). Defendant argues this lengthy warrantless surveillance violates his expectation of privacy because, although the area under surveillance was in plain sight, the information gathered over such a long period of time revealed more personal information than that which would be obtained for a shorter period.  As such, according to Defendant, the Fourth Amendment

protects an individual's multiple public locations over time from warrantless surveillance because the information obtained also reveals personal information that an isolated surveillance would not. *See* ECF No. [166] at 5-7 (citing *United States v. Jones*, 132 U.S. 945, 954-957 (2012) (Sotomayor, J., concurring). Thus, the eight (8) month surveillance of Defendant was able to reveal his "likeness, location, and behavior," in violation of Defendant's Fourth Amendment rights. ECF No. [166] at 7.

The Defendant's reliance on *Houston, supra,* and *Jones, supra,* is misplaced.     In *Houston*, the surveillance occurred outside the defendant's home, which warranted increased privacy concerns. 965 F. Supp. 2d at 871. *See also Oliver v. United States,* 466 U.S. 170, 180 (1984) (explaining that curtilage, the land immediately surrounding and associated with the home, is protected by the Fourth Amendment the same way the actual home is protected). In the present situation, the surveillance occurred on commercial property where the expectation of privacy is significantly diminished, if present at all.

Additionally, when reaching its decision in *Jones*, supra, the Supreme Court focused on the fact that, in that case, a physical trespass to obtain information had occurred. 132 U.S. at 945. The placement of the GPS device on the defendant's car was deemed sufficient to constitute a physical trespass, thus the Supreme Court's  decision did not rest on a right of privacy argument. *Id.* at 952.  The expectation of privacy discussion found in the concurrence of *Jones* was based on the detailed data obtained by tracking an individual's travels to many different locations over a period of time. That factual circumstance is distinguished from a pole camera installed to capture a particular area over time, operating without any physical trespass, and not intrusive enough to capture anyone who may be in their home or other locations of privacy. *Id.*at 954-957.

The Supreme Court case, *United States v. Knotts,* 460 U.S. 276, 280-281 (1983) is similar to the instant case, where the Supreme Court engaged in a reasonable expectation of privacy analysis. The defendant's whereabouts by car were monitored by a technological device installed in a barrel of chemicals purchased by defendant. *Id.* at 281. The technological device was installed before defendant owned the chemicals, thus no physical trespass occurred. *Id.* The Supreme Court concluded that because the location of the automobile carrying the container on public roads and the location of the off-loaded container in open fields near defendant's cabin had been voluntarily conveyed to the public, no illegal search had occurred. *Id.* As that defendant demonstrated, the police could have visually surveyed defendant and would have all the same facts revealed. *Id.*

### III.    Conclusion

Accordingly, the Court fails to find a violation of Defendant's Fourth Amendment rights by virtue of the use of pole cameras in this case. For the foregoing reasons, Defendant's Motion to Suppress is hereby denied.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Suppress, ECF No. [166], is **DENIED.**

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, this 15th day of September, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record